JOHN CLAFLIN & others vs. FREDERICK A. B. LOWE.

Worcester.    October 3, 1892. — October 20, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Insolvent Debtor — Jurisdiction — Absent Defendant — Payment into Court — Laches.*

It is no objection to the jurisdiction of this court to entertain a bill in equity, under the Pub. Sts. c. 157, § 15, to set aside a decree of the Court of Insolvency, that service on the insolvent, who has left the Commonwealth, is by publication of an order requiring him to appear and answer in accordance with the 5th chancery rule.

The payment of money into the Court of Insolvency, under the St. of 1884, c. 236, as amended by the St. of 1885, c. 353, as a percentage on claims of creditors under a composition confirmed by that court, should be large enough to cover all the claims against the debtor according to his schedule, except so far as the amount is modified by the proofs previously allowed by the court.

An insolvent's schedule of creditors contained the name of A., a foreign creditor, and of B., a domestic creditor; and both had notice of the insolvency proceedings, but they did not prove their claims, and no deposit was made on account thereof. The order of deposit for the payment of claims proved, the deposit in pursuance of the order, and the order of discharge were made on the same day. A. learned that there was no deposit for him three months afterwards. Two months later, he brought a bill in equity under the Pub. Sts. c. 157, § 15, to set aside the decree of the Court of Insolvency granting the discharge, and B. was allowed, upon his petition, more than a year afterwards, to join in the bill. The justice who heard the case found that B. "expressed to a representative of the insolvent his indifference to the insolvency proceedings, his intention not to prove, and his expectation of adjusting matters to his satisfaction outside of the courts, and this was his state of mind in fact"; that the insolvent was warranted by the conduct of A. in understanding that he declined to accept the offer of composition; that A. subsequently offered to prove his claim, if something more than the amount of the composition could be secured to him; and that "the plaintiffs owed, and did not show, the most exact diligence in asserting their rights, in view of the interests of third persons, including creditors who had attached in suits which were pending against the insolvent." *Held*, that the bill should be dismissed.

BILL IN EQUITY, filed July 25, 1890, by the members of the firm of H. B. Claflin and Company, of New York, to set aside a decree of the Court of Insolvency for Worcester, granting a discharge of the defendant. The case was heard by *Holmes*, J., and, at the request of the plaintiffs, reported for the consideration of the full court, in substance as follows.

It was agreed that, before the filing of the bill, the defendant had removed from Worcester to Ohio, and was residing there

when the bill was brought. The service was by publication only, and he appeared specially, and objected to the jurisdiction of the court; but the judge ruled that the bill was so far in the nature of an appellate proceeding that he should take jurisdiction of it, although personal service on the defendant in Massachusetts was impossible. He also objected to the entertaining of this bill at the suit of a New York creditor, but the judge overruled the objection. The judge also allowed the firm of Jordan, Marsh, and Company, Boston creditors of the defendant, to be made parties to the bill by amendment, upon their application, filed October 5, 1891, on the terms of their agreeing to take the fifty per cent of their claim contained in the offer of compromise in case they prevailed.

The defendant filed his petition in insolvency on February 5, 1890. The first publication of the warrant was on February 6, 1890. An offer of composition, dated February 5, was filed on February 8, offering fifty per cent on all claims, including the plaintiffs' claims. This sum the estate was able to pay.

The schedule of creditors showed the plaintiffs H. B. Claflin and Company to be creditors for $4858.25, and Jordan, Marsh, and Company to be creditors for $427.73. On February 28, 1890, an order of deposit was made "for the payment of all claims and charges as proved against his estate within ten days from the date of this order." The deposit was made according to the terms of this order. H. B. Claflin and Company and Jordan, Marsh, and Company had not proved, and no deposit was made on account of their claims. The defendant was granted his discharge on February 28, 1890. Both H. B. Claflin and Company and Jordan, Marsh, and Company had notice of the proceedings in insolvency. The judge found that Jordan, Marsh, and Company expressed to a representative of the insolvent their indifference to the insolvency proceedings, their intention not to prove, and their expectation of adjusting matters to their satisfaction outside of the courts, and this was their state of mind in fact. There was some difference in the testimony as to H. B. Claflin and Company; but the judge found that they reasonably were understood by the defendant's representatives to say that they would not prove for or take the fifty per cent, and on February 18, 1890, to offer to prove if something more than the fifty per cent

was secured to them. It was testified for H. B. Claflin and Company, and the judge found, if material, that one motive in fact inducing them not to prove was their doubt whether the deposit would be made, and their desire to withhold proof until the deposit was made in fact. On February 19, they were advised by their counsel that the Court of Insolvency required payment into court of the percentage offered on all the debts on the schedule, whether proved or not. Such had been the practice of the court until this case, when he changed his mind as to the meaning of the law. After that date they assumed that the deposit would be made, and that they would have some months to decide whether to take it or not, but the defendant had no notice of this fact. H. B. Claflin and Company learned in May that there was no deposit for them.

The judge found that the defendant was warranted by the plaintiffs' conduct in understanding that the plaintiffs declined, and said that they declined, to accept the offer; that the plaintiffs waived the deposit; that the plaintiffs owed, and did not show, the most exact diligence in asserting their rights, in view of the interests of third persons, including creditors who had attached in suits which were pending against the insolvent; and that the bill should be dismissed. Such decree was to be made as equity might require.

*J. Prentiss*, for the plaintiffs.

*W. A. Gile*, for the defendant.

KNOWLTON, J. The court has jurisdiction to entertain this bill on a publication of the order requiring the defendant to appear and answer in accordance with our 5th chancery rule. The suit is brought under the Pub. Sts. c. 157, § 15, which gives this court supervisory jurisdiction of proceedings in the Court of Insolvency, and it is in the nature of an appeal from that court. The pendency of proceedings in that court, and the appearance of the debtor there, give jurisdiction to make all proper orders and decrees, notwithstanding that the debtor departs from the Commonwealth so that service upon him can only be made by a publication, and this jurisdiction exists as well on a supervisory proceeding in this court as upon a general petition presented in the Court of Insolvency.

The St. of 1884, c. 236, as amended by the St. of 1885, c. 353,

was not explicit in regard to the question whether the payment of money into court, as a percentage on claims of creditors under a composition confirmed by the court of insolvency, should be large enough to cover claims appearing on the schedule filed by the debtor which have not been presented by the creditors for formal proof, or should provide only for those previously allowed by the court. The law on this point was so obscure that there was a difference of practice among the courts of insolvency, some requiring the payments to be made on the basis of the schedule, except as the proof before the court might have modified the amount, and others holding that a discharge might be granted with no payment or provision for payment of anything on claims not regularly proved previously to the confirmation of the composition and the making of the order. Under the latter construction of the law, creditors residing in this Commonwealth might find their claims barred by a discharge in the proceedings for composition, without receiving anything on them, and this might occur at the end of three weeks from the filing of the petition in insolvency, when perhaps, through absence or mistake, they had failed to receive any notice.

We are of opinion that the payment of money into court under this statute should be large enough to cover all the claims against the debtor, according to his schedule, except so far as the amount is modified by the proofs previously allowed by the court.

In the case of *Thompson* v. *Shepard*, decided by a single justice of this court in Norfolk, in April, 1890, reasons for this opinion were given at length, and filed with the papers in the case and published in some of the daily newspapers. The matter has since been made the subject of legislation, (St. 1890, c. 387,) and we do not deem it necessary to consider it further at this time.

The order of the Court of Insolvency being erroneous in not providing for payment of the percentage on the debts of the plaintiffs, we come to the question whether the plaintiffs are entitled to have the order corrected by this court. In the first place, it is found by the single justice that the plaintiffs Jordan, Marsh, and Company " expressed to a representative of the insolvent their indifference to the insolvency proceedings, their

intention not to prove, and their expectation of adjusting matters to their satisfaction outside of the courts, and this was their state of mind in fact." It is also found that the insolvent was warranted, by the conduct of the plaintiffs Claflin and Company, in understanding that they declined to accept the offer. It was the duty of the debtor for his own protection, and in the interest of the creditors, to see that a proper order was entered by the court; but, as against these plaintiffs, his failure to do so was excused, in part at least, by their conduct. The justice also very properly found "that the plaintiffs owed, and did not show, the most exact diligence in asserting their rights, in view of the interests of third persons, including creditors who had attached in suits which were pending against the insolvent." If the plaintiffs felt an interest in the proceedings in insolvency, or intended to make a claim upon the assets in the custody of the law, it was their duty to be diligent in following the proceedings and asserting their rights. They were duly notified of the hearing on the application for a composition; they knew, or were bound to know, that an order was likely to be made which would affect the rights of a large number of persons besides themselves, and that many others would be likely to act on the faith of the order. The order of payment, the payment in pursuance of the order, and the order of discharge, were all made on February 28, 1890. This bill was filed by the plaintiffs Claflin and Company on July 25, 1890, and the plaintiffs Jordan, Marsh, and Company filed their application for leave to become parties to the suit on October 5, 1891. Claflin and Company learned in May, 1890, that there was no deposit for them. It is fair to assume that the rights of attaching creditors referred to in the report had been affected by the order of the court and the doings under it, that the assets had changed hands, that very likely money had been furnished to pay the percentage on the security of the assets, that the percentage on the claims or on most of them had been paid to the creditors, some of whom may be irresponsible so that the money cannot be collected back, and that the debtor had materially changed his situation, relying on the supposed validity of the order. If we should grant this petition, and modify the order by a requirement that the debtor pay into court money for the percentage

on the claims of the plaintiffs, it might well be that the debtor would be unable to comply with it. In this case everything which has been done on the faith of the order would be liable to be set aside. It might be necessary to have an assignee appointed, and to have the assets, which are now scattered, collected so far as possible and distributed.

We are of opinion that the justice rightly ruled that the petitioners have not shown such exact diligence as would entitle them to a decree which might entail such serious consequences on others. Certainly this is so in regard to Jordan, Marsh, and Company, whose claim is small, and whose application was not made until nearly a year and eight months after the discharge was granted.

Claflin and Company are foreign creditors, whose claim is not cut off by the discharge in insolvency, and who hesitated a long time before deciding whether to submit themselves to the jurisdiction of the courts of this State in such a way that their claim might be discharged. After the offer of composition had been filed, they offered to prove their claim if something more than the amount of the composition could be secured to them. This act, if we rightly understand the finding, was against the policy of our law. St. 1884, c. 236, § 14.

In cases of this kind, where rights of so many persons and of so great importance are involved, a creditor who seeks to set aside a decree of a court should act with great promptness. Without attempting to lay down a precise rule for other cases, we are of opinion that, under the circumstances of this case, equity does not require us to set aside the order of the Court of Insolvency.

*Bill dismissed.*